UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:16-cr-77 |
| v. ) | |
| ) | Judge McDonough/Steger |
| CORRIE GILLISPIE ) | |

# REPORT AND RECOMMENDATION

This matter came before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) to conduct such evidentiary hearings as deemed necessary and to issue a report and recommendation on Defendant's Motion to Determine Competency [Doc. 37]. The Court notes that, when the question of competency is raised, the government has the burden of proving competency by a preponderance of the evidence. *United States v. Teague*, 956 F.2d 1427, 1431 n.10 (7th Cir. 1992); *United States v. Frank*, 956 F.2d 872, 875 (9th Cir. 1991); *United States v. Velasquez*, 885 F.2d 1076, 1089 (3rd Cir. 1989); *Lowenfield v. Phelps*, 817 F.2d 285, 294 (5th Cir. 1987), *aff'd*, 484 U.S. 231 (1988).

1. **Procedural Background.**

By way of background, Defendant's counsel filed a Motion to Determine Competency on July 11, 2016, seeking an evaluation pursuant to 18 U.S.C. §§ 4241 to determine if Defendant is mentally competent to stand trial or enter a plea [Doc. 37]. Defendant's counsel cited as a reason for the motion that "Defendant has shown 'extreme agitation and uncommunicative behavior' during their private visits 'so much so that nothing could be accomplished during, or from, those meetings'" [*Id.*]. During the course of court hearings on July 5 and July 7, 2016, Defendant shouted continuously in open court and had to be restrained by the attending United States

1

Marshals. Defendant's conduct raised legitimate concerns about his mental competence, but the undersigned was also mindful that Defendant's disruptive conduct could be a calculated attempt on his part to complicate or avoid prosecution for the crimes with which he has been charged [Doc. 38]. The government expressed no objection to the request for a mental evaluation. Consequently, an Order of Commitment for Mental Evaluation was entered on July 15, 2016 [*Id.*].

Defendant was delivered to the Federal Medical Center in Devens, Massachusetts ("FMC Devens"), on August 11, 2016 [Doc. 65], for a mental health evaluation pursuant to 18 U.S.C. §§ 4241 and 4247. J. Grondolsky, Warden of FMC Devens, submitted a request to the Court dated September 12, 2016, seeking an extension of time to complete the evaluation of Defendant on the basis of Defendant's refusal to participate in clinical interviews or to interact with staff, and the need for additional time to convince Defendant to participate in the mental evaluation. The request was granted, and an order was entered on September 14, 2016, directing that the mental evaluation be completed by October 12, 2016 [Doc. 45]. A second request for extension was submitted to the Court on October 17, 2016. At that point, Warden Grondolsky indicated that Defendant displayed an improvement in his willingness to interact with staff and an increased likelihood of participating in a mental evaluation. The second request was granted, and an order was entered on October 19, 2016, directing that the mental evaluation be completed by November 21, 2016 [Doc. 47].

By letter dated December 9, 2016, Warden Grondolsky submitted a Forensic Mental Health Evaluation Report ("Forensic Report") dated December 2, 2016. In the Forensic Report, the forensic psychologist responsible for evaluating Defendant, Dr. Shawn Channell, expressed

the following conclusions concerning Defendant's competence to stand trial:

> Based on a review of the record, Mr. Gillispie has generally been obstinate about how he wanted to handle his case from the very beginning. According to the PSR, he had initially refused court appointed counsel and planned to proceed pro se. Although he was then assigned an attorney, he refused to follow his attorney's advice not to testify during a detention hearing. Notably, he appeared to be quite rational and composed during the hearing. However, following the search of his son's home, Mr. Gillispie was extremely disruptive in court. Despite his behavior in court, there was no significant change in his demeanor during contemporaneous telephone calls. He has generally refused to talk with his attorney since these hearings. While the refusal to speak with his attorney was a change, it did not appear the defendant had worked with his attorney in any meaningful way even prior to this point.
>
> Arriving at an opinion of Mr. Gillispie's competence to stand trial is complicated by his refusal to participate in the evaluation. He was given multiple opportunities to participate, but refused at every point. The defendant perseverated on the treatment of his son during a search and was not willing to talk with me about anything else. Although I could not directly assess his rational and factual understanding of the proceedings against him, he does not appear to have a major mental illness which would impair these abilities. Similarly, while it is fairly clear he will not cooperate with his attorney, he does not have a mental illness which would impair his ability to do so. In effect, he is able to communicate with his attorney if he chooses to do so. Finally, he has made it clear he intends to "tear up" the courtroom the next time he is in court. Again, however, he does not have a mental illness which would impair his ability to behave in court. His behavior during the bond hearing clearly illustrates he is capable of behaving in court when he chooses to do so.
>
> In conclusion, based on the information currently available, it is my opinion the defendant is not suffering from a mental illness rendering him mentally incompetent to the extent he is unable to understand the nature and consequences of the proceedings against him or to assist in his defense and is competent to proceed with legal proceedings.

[Doc. 65 at 11]

The Forensic Report was filed under seal on January 25, 2017 [Doc. 65]. The undersigned ordered Defendant to either waive or move for a mental competency hearing by February 1, 2017 [Doc. 61]. An extension of time to February 10, 2017, was granted at

Defendant's counsel's request because he was unable to persuade Defendant to communicate with him [Doc. 68]. Ultimately, Defendant's counsel filed a Notice of Waiver of Competency Hearing; however, in that Notice counsel indicated that "because of defendant's refusal to communicate in this matter, defendant's signature has not been obtained" [Doc. 69]. As a result of Defendant's refusal to communicate with his counsel or provide a written waiver of the mental competency hearing, a hearing was held on February 16, 2016, to give Defendant an opportunity to advise the Court whether he wished to have a mental competency hearing or to waive such hearing [Doc. 71]. At the February 16 hearing, Defendant loudly yelled profanity and accusations of mistreatment from the moment he entered the courtroom until he was eventually escorted out of the courtroom [Doc. 73]. In the midst of Defendant's diatribe, he failed to address whether he desired a mental competency hearing.

In the absence of an express waiver by Defendant, an order was entered scheduling a mental competency hearing on March 8, 2017. Because Defendant had impeded three previous court hearings by yelling continuously in such a way that no one could speak over him, arrangements had to be made to allow Defendant to hear, see and participate remotely in the hearing. To that end, the undersigned ordered the United States Marshal to provide a live audio and video stream of the hearing to a cell immediately behind the courtroom [Doc. 73].

Defendant's mental competency hearing was held before the undersigned Magistrate Judge on March 8, 2017 [Doc. 74]. Present for the hearing were AUSA Jay Woods; Defendant's counsel, Gene Shiles; Defendant Corrie Gillispie; Dr. Shawn Channell (via videoconference); Jeremy Kanipes; Michael Kirkpatrick; David Ryan Mullins; and Michael Fugate.

At the beginning of the hearing, Defendant was brought into the courtroom so that he could be given an opportunity to attend and participate in the mental competency hearing [Doc. 75 at 8]. As the U.S. marshals escorted Defendant into the courtroom, he began talking loudly and continuously. He persisted in this conduct, refusing to acknowledge or respond to the undersigned's question as to whether he would like to participate in the hearing [*Id*. at 12–15]. When it became clear that Defendant intended to continue his loud, unilateral discourse for whatever length of time he remained in the courtroom, the marshals were instructed to place him in a secure cell behind the courtroom. In advance of the hearing, a video monitor had been placed immediately outside the bars of the cell in which Defendant was detained so that he could see and hear all of the proceedings in the courtroom. Defendant's counsel, Gene Shiles, confirmed that the monitor was positioned in such a way, and that the audio was at a sufficient volume, for Defendant to see and hear the proceedings while situated in his cell [*Id*. at 76-77].

2. **Findings from Mental Competency Hearing.**

The government first called as a witness (via videoconference) the evaluating forensic psychologist, Dr. Shawn Channell. In his live testimony at the mental competency hearing, Dr. Channell made the following salient observations:

> I struggled a fair amount with arriving at an opinion on Mr. Gillispie. When he presents as he does when he came into the courtroom earlier today, which is how he presented to me, he appeared mentally ill. That was my initial impression, was that he was experiencing symptoms of what I would call a manic episode, which is a symptom of bipolar disorder. Over the period of time that he was at the institution, I became aware of a number of inconsistencies historically and in his behavior at Devens. I reviewed the transcript of the bond hearing when he was in the courtroom in May. It was pretty clear to me that at that time, even though a decision about whether or not to testify may not have been a good one, his behavior was well controlled. Topics that he brought up were relevant and did not seem to be the result of mental illness. I reviewed phone calls that he was making around that time and throughout June, and his speech was appropriate

5

during those phone calls as well.

. . . .

Then similarly, while he was at Devens, I was getting reports from other staff members that he was interacting appropriately with them and was able to carry on a conversation and was pleasant. So when I would get this, I'd take that opportunity to go see him in a hope that he would cooperate with me. Then he would present exactly the same way with me that he had previously. That happened on both occasions. On both occasions a staff member had reported to me that they had had a good, pleasant interaction with him. As soon as possible I went to interview Mr. Gillispie, and he acted the same way with me that he had during the prior interactions with me. That's simply – it's not consistent with a major mental illness. What it is consistent with is volitional behavior that in my opinion for whatever reason, he has decided to be uncooperative with criminal procedures against him as well as the evaluation. So ultimately it was my opinion based on a review of all the information that I had and the fact that he really didn't have any history of mental illness – there is no documentation anywhere that he has ever had any mental health problems – that he doesn't suffer from a mental illness; that his behavior is volitional; and in my opinion, that he is competent.

. . . .

I should also add that in addition to the fact that he behaved like this with me during the evaluation, he didn't really demonstrate any other symptoms of a mental illness. For example, he was clean. He kept himself well groomed. He didn't get in trouble. When he was in his cell, he was calm and not acting out. Again, I've dealt with a lot of patients who have mania, who have bipolar disorder. It doesn't stop. I mean, they are really out of control until you get them medicated. Again, it's not situational. It's kind of across the board. His presentation seems to be linked to the situation that he is in. He left me with no other option but to determine that he was deciding how he was going to be [sic] behave in those situations.

. . . .

… he does not in my opinion have a major mental illness, and because he does not have a major mental illness under the statutory language that pertains to competency, he could not have a mental disease or the defect that would render him mentally incompetent. … In my opinion based on his history and presentation, he does have a condition called antisocial personality disorder. That is a personality style that is characterized by failure to follow rules, problems with authority, dishonesty. There's a lot of narcissism that goes along with that. I

> think that that personality style has a lot to do with the way he is presenting to this. In my opinion, he is someone who is use[d] to controlling situations, and this is a situation where he really has very little control over what is happening. This is a way that he can in some way control the process.

[*Id*. at 21-25, 30-31].

The government's next two witnesses, Jeremy Kanipes and Michael Kirkpatrick, are both employed as corrections officers at the Bradley County Jail where Defendant has been incarcerated since he was detained on the pending federal charges. Other than a single incident in which Defendant allegedly stole some food items, both witnesses testified that Defendant's behavior is not disruptive and that he is able to conform his behavior to meet the rules and expectations at the jail [*Id*. at 53-63].

The government next called as a witness David Ryan Mullins, Special Agent for Homeland Security Investigations. Through Special Agent Mullins, the government offered into evidence two recordings of phone calls between Defendant and one of his associates, Amber Gaston. The recordings were made while Ms. Gaston was incarcerated in Whitfield County Jail for, among other things, a criminal charge for prostitution. Included in these two conversations is advice from Defendant directing Ms. Gaston to feign mental illness if questioned by authorities [Doc. 74-1 Ex. 3, 4; Doc. 75 at 64-72].

Finally, the government called as a witness Deputy United States Marshal Michael Fugate. Deputy Marshal Fugate has been called upon to escort Defendant to the undersigned's courtroom on at least two occasions. Deputy Fugate testified that Defendant is quiet and compliant with the marshals' instructions when he is in his cell; that he only becomes loud and disruptive when the marshals escort him from his cell into the courtroom; and that his loud and disruptive behavior ceases as soon as he is returned to his cell [*Id*. at 78-81].

Defendant's counsel did not call any witnesses to testify on the issue of Defendant's mental competency. The Court takes judicial notice, however, that Defendant has, for the most part, refused to cooperate or communicate with his counsel.

### 3. **Conclusion.**

Based on the totality of the record, the undersigned finds that the government has met its burden of proving competency by a preponderance of the evidence. More specifically, the evidence establishes that Defendant is NOT suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. Defendant appears to understand the nature and consequences of the proceedings against him, but he has made a calculated decision to disrupt those proceedings to the extent possible and to refrain from communicating with his counsel. The Court accepts Dr. Channell's explanation that, while Defendant is not suffering from any mental illness,

> … he does have a condition called antisocial personality disorder. That is a personality style that is characterized by failure to follow rules, problems with authority, dishonesty. There's a lot of narcissism that goes along with that. I think that the personality style has a lot to do with the way he is presenting to this. In my opinion, he is someone who is used[d] to controlling situations, and this is a situation where he really has very little control over what is happening. This is a way that he can in some way control the process. So I don't know how he thinks this will ultimately impact him or affect his case, but I believe that he has chosen to try and control this process by behaving the way he does.

[*Id*. at 30-31].

For that reason, while criminal proceedings against Defendant should remain on track, the Court will have to make arrangements to allow Defendant to participate remotely in future hearings and trial if he continues to engage in disruptive conduct when given an opportunity to

be present in the courtroom for such proceedings.

For the foregoing reasons, pursuant to 18 U.S.C. § 4241(d), it is RECOMMENDED[1] that the Court find, by a preponderance of the evidence that Defendant is NOT presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to assist properly in his defense.

**ENTER.**

s/ *Christopher H. Steger*
United States Magistrate Judge

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 59(b)(2) of the Federal Rules of Criminal Procedure. Failure to file objections within the time specified waives the right to appeal the District Courts order. *Thomas v. Arn*, 474 U.S. 140 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).