UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 1-16-CR-77-TRM-CHS |
| v. | ) | |
| | ) | |
| CORRIE GILLESPIE | ) | |

## **REPORT AND RECOMMENDATION**

### I. Introduction

Defendant Corrie Gillespie moves to suppress evidence obtained from a tracking device law enforcement placed on his vehicle [Doc. 39]. It is uncontroverted that the affidavit relied upon by the government to establish requisite probable cause for the tracking warrant cites the wrong section of the Mann Act, 18 U.S.C. §§ 2421 – 2424. More specifically, the affidavit erroneously cites the section of the Mann Act prohibiting interstate sex trafficking of *minors*, 18 U.S.C. § 2423, when it should cite the section prohibiting interstate sex trafficking of *adults*, 18 U.S.C. §§ 2421, 2422. Defendant relies upon this erroneous citation to argue that the evidence obtained through the tracking warrant should be suppressed. For the reasons stated herein, I find that probable cause exists to support the tracking warrant, and further, that the good faith exception to the exclusionary rule applies. Consequently, I **RECOMMEND** that the motion to suppress be **DENIED**.

### II. Facts

On February 12, 2016, Special Agent Ryan Mullins presented an Application for a Tracking Warrant, with his affidavit attached, to United States Magistrate Judge Walter Johnson in Rome, Georgia [Doc. 40-1, Tracking Warrant Application and Affidavit, Page ID## 445-51]. The affidavit sought to present grounds for probable cause in support of a tracking

warrant for a "gray Chevrolet Equinox bearing license plate number M44 29F" (the "Subject Vehicle") which Agent Mullins stated he believed was "being used in furtherance of violations of 18 U.S.C. § 2423 related to travel with intent to engage in illicit sexual activity . . ." [Mullins' Affidavit ¶ 1]. Agent Mullins sought a tracking device for the Subject Vehicle which he believed would "lead to evidence, fruits, and instrumentalities of the aforementioned crimes as well as identification of individuals who are engaged in the commission of those and related crimes" [*Id.*]. Mullins' affidavit further provides:

- Agent Mullins is a special agent with Homeland Security Investigations ("HSI"). He has received training and experience in the laws prohibiting human trafficking and sex trafficking, has been an affiant on multiple search warrants, and is personally familiar with many investigative techniques [*Id.* ¶ 2]. He has also interviewed numerous witnesses to, and victims of, human sex trafficking operations, and they have described the methods used to recruit, coerce, entice and transport persons in these criminal activities [*Id.*].

- HSI is investigating Defendant "for violations of 18 U.S.C. § 2423 related to travel with intent to engage in illicit sexual activity and other offenses related to commercial trafficking by force, fraud, or coercion" [*Id.* ¶ 4]. On October 9, 2009, the Calhoun Police Department and HSI arrested Defendant, who uses the street names of Biggtyme, Biggtyme Chattanooga Tyme, and Tyme, in an undercover prostitution sting in Calhoun, Georgia [*Id.* ¶ 5]. Undercover officers responded to a Craigslist advertisement for prostitution services [*Id.* ¶ 5]. Defendant drove Amber Gaston to the meeting place where they were arrested and later convicted in July 2010 of pimping and prostitution, respectively [*Id.* ¶ 5].

- On July 26, 2013, officers with the Chattanooga Police Department and the Federal Bureau of Investigation (FBI) conducted a prostitution sting in Chattanooga [*Id.* ¶ 6]. Amber Gaston and Heather Bilbrey arrived in a 1988 Buick sedan registered to Defendant. Defendant was observed in the Subject Vehicle circling the parking lot of the hotel where Gaston and Bilbrey were arrested [*Id.* ¶ 6]. Gaston and Bilbrey had "Tyme" prominently tattooed on their faces and necks [*Id.* ¶ 6]. Defendant was subsequently arrested for promoting prostitution [*Id.* ¶ 6]. Gaston and Bilbrey were arrested for prostitution. [*Id.*]

- In April 2014, an FBI/HSI informant began to communicate with Defendant using Facebook and the telephone [*Id.* ¶ 7]. During some of these communications, Defendant attempted to recruit the informant to prostitute for him [*Id.* ¶ 7]. On April 21, 2014, Defendant drove the Subject Vehicle to meet the informant in Chattanooga [*Id.* ¶ 7].

2

With the informant's consent, the conversation was recorded [*Id.* ¶ 7]. Defendant attempted to recruit the informant as a prostitute promising her she could make large amounts of money from tricks if she were working for him [*Id.* ¶ 7].

- On October 14, 2015, in a joint sting operation with the Tennessee Bureau of Investigation and the Chattanooga Police Department, an undercover agent called a telephone number listed in an advertisement and requested a prostitute at a specific location [*Id.* ¶ 8]. Gaston and Bilbrey arrived in the Subject Vehicle at the appointed time and place in Chattanooga where they negotiated with the undercover agents for sex acts in return for money [*Id.* ¶ 8]. After Bilbrey refused offers of assistance and victim services, she was arrested for prostitution [*Id.* ¶ 8]. Gaston accepted offers of assistance and was taken to a victims' shelter outside Chattanooga [*Id.* ¶ 8]. However, she fled the following day and avoided prosecution [*Id.* ¶ 8].

- On February 3, 2016, Gaston was arrested in Dalton, Georgia, in a joint prostitution sting involving the Dalton Police Department, the Georgia Bureau of Investigation, and HSI [*Id.* ¶ 9]. An undercover officer arranged for a prostitute through the website, Backpage.com, and Gaston arrived at the meeting place in the Subject Vehicle [*Id.* ¶ 9]. Gaston was incarcerated in Georgia for prostitution [*Id.* ¶ 9]. Following Gaston's February 3, 2016, arrest, the Dalton Police Department seized the Subject Vehicle [*Id.* ¶ 10]. While the Subject Vehicle was still in police custody, Agent Mullins applied for and obtained the tracking warrant for the Subject Vehicle at issue in this motion.

### III. Discussion

#### A. Probable Cause to Issue the Tracking Warrant

The Fourth Amendment provides no warrant shall issue but upon probable cause, supported by oath or affirmation ...." U.S. Const. amend IV. To establish probable cause to justify a search warrant, an affidavit must set forth facts which indicate "a fair probability exists that evidence of a crime will be located on the premises of the proposed search." *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005) (internal citations omitted); *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005). The Court must consider the totality of the circumstances as set out in the four corners of the affidavit. *Illinois v. Gates*, 462 U.S. 213, 230 (1983) (totality of the circumstances standard); *Whiteley v. Warden, Wyoming State Penitentiary*, 401 U.S. 560, 565 n. 8 (1971) (Court limited to review of affidavit itself). The

court reviewing a search warrant affidavit is to avoid a "grudging or negative attitude" toward a warrant or a "hypertechnical critique" of a warrant and accord the magistrate's determination of probable cause "great deference." *United States v. Allen,* 211 F.3d 970, 973 (6th Cir. 2000) (*en banc*). "The critical element in a reasonable search is not that the owner of property is suspected of crime but that there is reasonable cause to believe that the specific things to be searched for and seized are located on the property to which entry is sought." *United States v. Brooks*, 594 F.3d 488, 492-93 (6th Cir. 2010) (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978)).

Placement of a tracking device on a person's vehicle to monitor that vehicle's movements constitutes a search under the Fourth Amendment requiring a warrant supported by probable cause. *United States v. Jones*, 565 U.S. 400 (2012). Defendant contends that the affidavit in support of the warrant failed to set forth probable cause to believe evidence would be found of interstate sex trafficking of minors in violation of 18 U.S.C. § 2423. Therefore, he argues, placement of the tracking device on the Subject Vehicle violated the Fourth Amendment's prohibition against unreasonable searches.

More specifically, Defendant contends the application lacks probable cause for two reasons: (1) the affidavit fails to allege and fails to provide a sufficient basis to believe the Subject Vehicle was involved in interstate commerce; and (2) the application mistakenly relies upon a statute which prohibits sex trafficking of minors rather than adults. Both of these issues are addressed below.

            **i.**    **Probable Cause for Interstate Sex Trafficking**

I will first address whether the affidavit sets forth probable cause to believe evidence of a violation of 18 U.S.C. § 2422(a) (*i.e.*, interstate sex trafficking of adults) would be found by placement of the tracking device on the Subject Vehicle. If there was no probable cause to

4

believe that *interstate* sex trafficking was taking place, then it would make no difference whether the application for the warrant identified the victims of the interstate sex trafficking as adults or children. Without evidence of interstate sex trafficking, the tracking warrant should not have been approved. So, the existence of probable cause as to interstate sex trafficking is a threshold question.

Federal law prohibits a person from knowingly persuading, inducing, enticing, or coercing an individual to travel in interstate commerce to engage in prostitution. 18 U.S.C. § 2422(a).[1] The four corners of the affidavit provide the following:

- In 2009, Defendant and Amber Gaston were arrested and convicted of pimping and prostitution, respectively, following a prostitution sting in Georgia in which they traveled together in one vehicle to the prearranged meet-up.

- Within a two-and-a-half year period immediately prior to the issuance of the tracking warrant, the Subject Vehicle was used four times in incidents related to prostitution of adults. Three incidents of prostitution occurred in Tennessee and one in Georgia.

- In July 2013, in a prostitution sting, Defendant was arrested in the Subject Vehicle in Tennessee circling the hotel parking lot where undercover agents had made arrangements to meet prostitutes for sex. Gaston and another woman present at that location were arrested for prostitution. Gaston was connected to Defendant not only by physical proximity, but also by the tattoos of Defendant's pseudonyms on her face and neck.

- In April 2014, Defendant met a confidential informant in the Subject Vehicle in Tennessee and attempted to recruit her to work for him as a prostitute.

- In October 2015, in another prostitution sting, undercover officers met Amber Gaston and another woman traveling in the Subject Vehicle at a prearranged

---

[1] 18 U.S.C. § 2422(a) provides:
> Whoever knowingly persuades, induces, entices, or coerces any individual to travel in interstate or foreign commerce, or in any Territory or Possession of the United States, to engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both.

- location in Tennessee. The undercover officers negotiated for illegal sex acts with the two women before revealing themselves as police officers.

- Three and a half months later and only nine days before the tracking warrant was issued, in yet another undercover prostitution sting, officers met Amber Gaston traveling in the Subject Vehicle in Georgia for prearranged, illegal sex.

In his motion to suppress, Defendant has examined each paragraph of the application piecemeal to argue there is no evidence of sex trafficking in interstate commerce. The Court must, however, look to the totality of the circumstances. In doing so, it is apparent that the application presents probable cause to support the belief that the Subject Vehicle was being used to transport adults across state lines (Tennessee and Georgia) to engage in prostitution, at the direction of the Defendant.

Transportation of persons across state lines constitutes conduct in interstate commerce. *See Caminette v. United States*, 242 U.S. 470, 489 (1917) ("The transportation of passengers in interstate commerce, it has long been settled, is within the regulatory power of Congress, under the commerce clause of the Constitution, and the authority of Congress to keep the channels of interstate commerce free from immoral and injurious uses has been frequently sustained, and is no longer open to question.") *See also Taylor v. United States*, 136 S.Ct. 2074, 2079 (2016) ("there are three categories of activity that Congress may regulate under its commerce power: (1) the use of the channels of interstate commerce. . . .") (internal citation omitted). Whether the transportation method used is commercial or not is immaterial for purposes of interstate commerce. *Heart of Atlanta Motel v. United States*, 379 U.S. 241, 357 (1964) ("Nor does it make any difference whether the transportation [across state lines] is commercial in character").

I find that Agent Mullins' affidavit set forth facts to establish probable cause to believe that the Subject Vehicle was used in interstate commerce in an enterprise to traffic adults for

purposes of prostitution in violation of Section 2422(a), and that a tracking device on the Subject Vehicle would lead to evidence of the same.

> ii. **Does the warrant lack probable cause because the application cited a section of the Mann Act dealing with children rather than adult sex trafficking victims**

The more difficult question presented to the Court is whether the application fails because it mistakenly relies upon a statute that prohibits interstate sex trafficking of *minors* when the affidavit establishes only that Defendant was engaged in interstate sex trafficking of *adults*.

The government concedes the application is devoid of any reference to minors, but argues the motion to suppress should be denied because the affidavit provides probable cause to issue a tracking warrant for adult interstate sex trafficking. According to the government, the AUSA and Agent Mullins simply made a mistake in the warrant application and affidavit by citing the wrong section of the Mann Act, 18 U.S.C. § 2423, when they should have cited §§ 2421(a) and 2422(a) which prohibit interstate sex trafficking of adults. The government argues that, pursuant to *United States v. Church*, 823 F.3d 351 (6th Cir.), *cert. denied*, 137 S.Ct. 255 (2016), the search warrant was properly supported by probable cause.

In *Church*, police officers entered the defendant's residence with his permission and became aware of marijuana on the premises. While one officer remained at the residence, a second officer left to obtain a search warrant. The second officer averred in his affidavit that there was probable cause to believe the residence was currently in possession of evidence of a crime in violation of Tenn. Code Ann. § 39-17-417. That statute, which is a section of the Tennessee Drug Control Act of 1989, prohibits drug *trafficking*, not possession. The officer stated in his affidavit that he had been in the residence that day and smelled burnt marijuana; that defendant had admitted he had recently smoked marijuana; and that defendant's girlfriend

7

admitted that defendant regularly smoked marijuana. The officer requested a warrant to search for "controlled substances," among other things.

Defendant's residence was searched pursuant to the warrant. Police recovered 800 Dilaudid pills and a firearm, and defendant moved to suppress this evidence. Defendant asserted the warrant was invalid because the affidavit set forth facts relating exclusively to the crime of simple *possession* of marijuana, not *trafficking* of marijuana, whereas the statute relied upon for the warrant criminalized only trafficking, not possession. Simply put, the facts of the affidavit did not provide probable cause for the offense of drug trafficking, which was the only offense listed in the application for the search warrant, so defendant moved to suppress the evidence. The *Church* court rejected this argument and held that the affidavit presented probable cause to issue the search warrant, reasoning:

> [D]rugs are contraband, and the police have a right to seize them, pursuant to a search warrant, wherever they are likely to be present. For purposes of this warrant, therefore, it did not matter whether the police suspected that Church possessed marijuana, dealt marijuana, or committed some other crime. *See Zurcher*, 436 U.S. at 555–56, 98 S.Ct. 1970. What mattered was that there was a 'fair probability' that marijuana was in the house. [*Berry,* 565 F.3d at 339]. [The officers]'s affidavit left no doubt of that probability.

*Id.* at 355. *See also United States v. Abernathy*, 843 F.3d 243, 251 (6th Cir. 2016) ("it does not matter whether the Affidavit established probable cause for marijuana possession, or marijuana trafficking; as long the Affidavit showed a fair probability that marijuana would be found in Defendant's home, the Warrant was justified.. . . . Accordingly, we hold that the Warrant was not overbroad.") (citing *Church*, 823 F.3d at 355).

The Sixth Circuit took a somewhat different approach in *United States v. Hodson*, 543 F.3d 286 (6th Cir. 2008). *Hodson*, decided before *Church*, concerned a warrant issued to search for evidence of child pornography in the home of a suspected child molester. The search warrant

8

affidavit recounted a conversation in which the occupant of the residence to be searched stated he had engaged in sex with a certain minor and expressed a desire to have sex with a 12 year old boy. The *Hodson* Court held evidence of child molestation was insufficient to support probable cause that evidence of child pornography would be found in the home. *Id.* at 293. The *Hodson* Court opined, "[a]n officer seeking a warrant must produce adequate supporting facts about the underlying circumstances to show that probable cause exists to support the particular search requested." *Id.* at 293-94. The *Church* Court distinguished *Hodson* as follows:

> In this case, in contrast [to *Hodson*], a detective requested a warrant to search for contraband in a place where the detective had already seen it. The facts here are analogous not to *Hodson,* but to a case where the police stumble upon child pornography in a home, and then ask a magistrate for a warrant to search the home for child pornography. The difference between this case and *Hodson,* therefore, is simply that in this case the affidavit established probable cause.

*Church,* 823 F.3d at 356.

I conclude that Agent Mullins' affidavit supports probable cause to place a tracking device on the Subject Vehicle to seek evidence of interstate sex trafficking, and that the distinction between adults and children for purposes of sex trafficking is not critical to the determination of probable cause. The reasoning the Sixth Circuit applied to arrive at its decision in *Church* is instructive. In that case, the police officer mistakenly cited a statute that criminalized only drug trafficking when the facts in his affidavit supported only the crime of drug possession. Even though the police officer cited the wrong statute, the Sixth Circuit upheld probable cause, finding that the police have a right to seize illegal drugs regardless of whether they are being held for personal use or for drug dealing. Possession of marijuana was, in fact, a crime in the state of Tennessee, even if the police officer cited the criminal statute for trafficking rather than for possession. *See id.* at 355-56. As the Court stated, "What mattered was that there

was a 'fair probability' that marijuana was in the house. *Id.* at 355 (quoting *United States v. Berry,* 565 F.3d 332,339 (6th Cir. 2009)).

In the instant case, the Court is dealing with sex trafficking rather than the illegal drug trade, but similar principles apply. The purpose of the Mann Act, 18 U.S.C. §§ 2421 – 2424, is to prevent the interstate sex trafficking of human beings. The first two sections, 2421 and 2422, deal with adults, while the third section, 2423, deals with children. When applying for a tracking warrant, Agent Mullins cited a section of the Mann Act, 18 U.S.C. § 2423, which makes it illegal to engage in sex trafficking of minors, when the facts cited in the affidavit clearly established that the victims of the sex trafficking were adults. While that is true, the primary consideration is not the age of the victims. Rather, it is whether probable cause existed to believe that interstate sex trafficking of human beings was occurring. The Court held in *Church*, "[D]rugs are contraband, and the police have a right to seize them, pursuant to a search warrant, wherever they are likely to be present. For purposes of this warrant, therefore, it did not matter whether the police suspected that Church possessed marijuana, dealt marijuana, or committed some other crime." *Id.* at 355 (*citing Zurcher*, 436 U.S. at 555–56). Following that reasoning, I would observe that interstate sex trafficking is illegal and law enforcement has a right to investigate it through a search warrant when evidence is presented to establish probable cause that it is occurring. For purposes of the warrant, it does not matter whether the interstate sex trafficking involves adults or children. The important factor is that probable cause for the crime of interstate sex trafficking was established through the affidavit. Consequently, I find that Agent Mullins did set forth facts sufficient to support probable cause for the offense of interstate sex trafficking, which is barred by the Mann Act, 18 U.S.C. §§ 2421 – 2424, and evidence obtained through the use of the tracking warrant should not be suppressed.

I note that, in *Church,* one judge of the three judge panel concurred in result on separate grounds finding that the good faith exception as articulated in *United States v. Leon*, 468 U.S. 897 (1984) operated to save the evidence from exclusion. *Church*, 823 F.3d at 357-64 (Griffin, J., concurring). I now turn to the good faith exception of the exclusionary rule, which leads to the conclusion that, even if the Court were to conclude that the tracking warrant was not supported by probable cause, the evidence obtained through the warrant should not be excluded.

### B. Good Faith Exception to the Exclusionary Rule

#### i. June 26, 2017 Evidentiary Hearing on Good Faith Issue

The government argues the good faith exception to the exclusionary rule should apply because the United States *meant* to cite 18 U.S.C. §§ 2421 and 2422, when it mistakenly cited § 2423, and the affidavit provides the requisite probable cause for a tracking warrant predicated on those statutes. In light of this good faith argument by the government, the undersigned held an evidentiary hearing to examine the basis for Agent Mullins' citation of § 2423 in the affidavit. *See United States v. King*, 127 F.3d 483, 486 (6th Cir. 1997) (remanding for an evidentiary hearing on a good faith issue).

Agent Mullins and Assistant United States Attorney (AUSA) Jay Woods testified on June 26, 2017, as follows:

- When Agent Mullins originally prepared his affidavit, he cited 18 U.S.C. § 1591 which proscribes sex trafficking of minors with or without force, fraud or coercion *and* proscribes sex trafficking of adults if done by means of force, fraud, or coercion. *See* 18 U.S.C. § 1591. Agent Mullins submitted to AUSA Woods his initial draft affidavit, which cited 18 U.S.C. § 1591 as the basis for the tracking warrant. After reviewing the draft, AUSA Woods advised Agent Mullins that, under the statute Agent Mullins cited, the affidavit would need to provide probable cause to believe the tracking device on the Subject Vehicle would reveal evidence of sex trafficking of adults by force, fraud or coercion. AUSA Woods further advised Agent Mullins that, since 18 U.S.C. § 2423(b) prohibited sex

11

- trafficking but did not require a showing of force, fraud, or coercion, the affidavit should cite 18 U.S.C. § 2423 as the legal basis to obtain the tracking device.

- Agent Mullins received by email AUSA Woods' revision to his affidavit on February 11, 2016, and reviewed it for general accuracy. He did not research 18 U.S.C. § 2423, instead relying upon AUSA Woods to cite the correct statute. Agent Mullins testified that he had had a seven year working relationship with AUSA Woods and had no reason to believe that AUSA Woods would make a mistake.

- The following day, Agent Mullins met with United States Magistrate Judge Walter Johnson in the United States District Court for the Northern District of Georgia. There, he affirmed under oath that the facts in his affidavit were true and accurate [Application for Tracking Warrant, Doc. 40-1, Page ID # 445]. Agent Mullins further testified that it was his intent, both at the time he prepared the affidavit and when he swore to its accuracy, to obtain the tracking device to search for evidence of interstate sex trafficking of adults, not minors. He was unaware that the section of the Mann Act cited by AUSA Woods dealt with sex trafficking of minors, not adults.

- AUSA Woods testified at the June 26, 2017, evidentiary hearing that citation of the incorrect statute in the affidavit was not a typographical error. He explained that he had reviewed the elements of a violation under 18 U.S.C. § 2423(b) which prohibits "a person" from traveling in interstate commerce "for the purpose of engaging in any illicit sexual conduct with another person. . . ."[2] When he revised Agent Mullins' affidavit to cite this statute, he did not realize that Section 2423(f) of Title 18[3] explicitly defines "illicit sexual conduct" as sexual conduct "with a person under 18 years of age." Woods stated that it was his intent that the affidavit refer to interstate sex trafficking of adults, not minors; that the affidavit should have cited 18 U.S.C. §§ 2421 and 2422(a); and that the citation of Section

---

[2] 18 U.S.C. § 2423(b) provides:
(b) **Travel with intent to engage in illicit sexual conduct.**--A person who travels in interstate commerce or travels into the United States, or a United States citizen or an alien admitted for permanent residence in the United States who travels in foreign commerce, for the purpose of engaging in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both.

[3] 18 U.S.C. § 2423(f) provides:
(f) **Definition.**--As used in this section, the term "illicit sexual conduct" means-
(**1**) a sexual act (as defined in section 2246) with a person under 18 years of age that would be in violation of chapter 109A if the sexual act occurred in the special maritime and territorial jurisdiction of the United States;
(**2**) any commercial sex act (as defined in section 1591) with a person under 18 years of age; or
(**3**) production of child pornography (as defined in section 2256(8)).

2423 was due to a misunderstanding on his part of the definition of "illicit sexual activity" found in Section 2423(f).

### ii. Application of the Good Faith Exception

Relying on *United States v. Leon*, 468 U.S. 897 (1984) and *Herring v. United States*, 555 U.S. 135 (2009), the government asserts citation of the wrong statute should not result in the exclusion of evidence obtained from the tracking device in the government's case-in-chief against Defendant. In *Leon*, the Supreme Court focused on an error made by a state court judge in issuing a search warrant based on an inadequate affidavit. The judge had issued a search warrant on the basis of an affidavit which relied, in part, on information obtained from a confidential informant. The affidavit was determined to lack probable cause because there was insufficient information in the affidavit to support the confidential informant's credibility and the information in the affidavit was "fatally stale." *Leon*, 468 U.S. at 904. Nevertheless, the Court held the exclusionary rule did not apply where the warrant: (1) was issued by a detached and neutral magistrate; (2) the affiant had not been dishonest or reckless with the truth in the affidavit; (3) the affidavit was not so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) the warrant was not facially deficient on its face, *i.e.* failing to particularize the place to be searched or the things to be seized. *Id.* at 923. The Court's rationale was that, where police acted in objectively good faith on an apparently valid search warrant which was later deemed invalid, application of the exclusionary rule would have no deterrent effect on the police. Therefore the cost of suppressing reliable evidence outweighed the deterrence benefit of excluding the evidence. *Id.* at 922. In addition, the Court disavowed concern that a good faith exception to the exclusionary rule would encourage more judicial errors in the issuance of search warrants:

> [W]e cannot conclude that admitting evidence obtained pursuant to a warrant while at the same time declaring the warrant was somehow defective will in any way reduce judicial officers' professional incentives to comply with the Fourth Amendment, encourage them to repeat their mistakes, or lead to the granting of all colorable warrant requests.

*Id.* at 917.

Defendant asserts that the good faith exception articulated in *Leon* does not apply. He relies instead on the Sixth Circuit's decision in *United States v. Abboud*, 438 F.3d 554 (6th Cir. 2006). In *Abboud,* the Sixth Circuit confronted facts similar to those in the instant case. More specifically, the *Abboud* affiant did not cite in his search warrant application the statute for each specific crime for which he sought evidence. In the application, the officer stated he was seeking evidence of bank fraud in violation of 18 U.S.C. § 1344. The supporting affidavit provided detailed facts with respect to several fraud crimes other than the type of bank fraud criminalized by 18 U.S.C. § 1344.

The questions before the Sixth Circuit were: (1) whether the search warrant was valid as to evidence of crimes in violation of all the statutes listed in the affidavit as well as for 18 U.S.C. § 1344; and (2) if not, whether the good faith exception would apply to prevent exclusion of such evidence from trial. The Sixth Circuit answered no to both questions, citing three bases for its decision.

First, the plain language of the application indicated that the affidavit was being incorporated to provide probable cause for a violation of 18 U.S.C. § 1344 *only*. *Id.* at 569. Second, it was impossible to determine whether the issuing magistrate found probable cause with respect to all of the crimes enumerated in the affidavit or just 18 U.S.C. § 1344. *Id.* Third, the Sixth Circuit noted that the exclusionary rule's purpose is to deter police misconduct and the officer seeking the search warrant "maintains the responsibility of clearly setting out the

14

violations for which he is searching for evidence. Specifically listing the additional violations on the face of the warrant would have required a minimal effort, and the resulting clarity would have made the effort worthwhile." *Id.* at 570. The *Abboud* Court expressed concern that by not requiring a strict interpretation of the search warrant application's language, it would risk police abuse of the warrant process in the future:

> [W]hile the record does not indicate any misconduct on the part of law enforcement in this case, a less than imaginative mind could conjure a scenario where law enforcement purposely placed hidden violations in the affidavit in order to bootstrap these violations to the magistrate's probable cause determination.

*Id.* The Court concluded that the good faith exception did not apply because "[l]aw enforcement may not take advantage of the warrant's equivocal posture to illegally seize evidence." *Id.* at 578.

Three years after the Sixth Circuit's decision in *Abboud*, the Supreme Court considered the good faith exception as it applied to errors made by police officers in relation to the execution of an arrest warrant. In *Herring v. United States*, 555 U.S. 135 (2009), officers arrested the defendant based on a warrant issued from an adjoining county. In a search incident to the arrest, the officers found illegal drugs and an firearm on the defendant. However, the arresting officers soon learned that the arrest warrant issued from the adjoining county had been withdrawn and the police department from that county had negligently failed to make note of that fact in their computer system. When the defendant moved to suppress the evidence found during the search incident to arrest, the Court held application of the exclusionary rule did not apply because the "error was the result of isolated negligence attenuated from the arrest." *Id.* at 136. The Court stated "the benefits of deterrence must outweigh the costs." *Id.* at 141. "[E]vidence should be suppressed only if it can be said that the law enforcement officer had

15

knowledge or may be properly charged with knowledge, that the search was unconstitutional under the Fourth Amendment." *Id*. at 143 (internal citation omitted). The Court observed that those abuses found to give rise to the exclusionary rule "featured intentional conduct that was patently unconstitutional." *Id.* The Court then gave several examples of these abuses: in *Weeks v. United States*, 232 U.S. 383 (1914), an officer broke into a house without a warrant and without sufficient information to obtain a warrant had he tried to do so and confiscated papers*;* in *Silverthorne Lumber Co. v. United States,* 251 U.S. 385 (1920), an officer went to defendant's office "without a shadow of authority," *id.* at 390, and seized evidence without a warrant; and in *Mapp v. Ohio*, 367 U.S. 643 (1961), "officers forced open a door to Ms. Mapp's house, kept her lawyer from entering, brandished what the court concluded was a false warrant, then forced her into handcuffs and canvassed the house for obscenity." *Herring*, 555 U.S. at 143-44.

The *Herring* Court opined that, if police in the case currently before it had been shown to be reckless in maintaining a warrant system or to have knowingly made false entries to lay the groundwork for future false arrests, then exclusion would be justified, but such conduct did not occur in this case. *Id.* at 146. "An error that arises from a nonrecurring and attenuated negligence is far removed from the core concerns that led us to adopt the [good faith] rule in the first place." *Id.* at 144. The Court directed,

> To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. As laid out in our cases, the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence. The error in this case does not rise to that level.

*Id.*

If *Abboud* were controlling, this Court would be facing a closer call as to whether failure to name the proper statute in the search warrant application might be fatal, both as to probable cause and to the good faith exception; however, *Herring* was decided after *Abboud.* And, in *Herring*, the Supreme Court held that even police error, as long as it was not intentional, reckless, grossly negligent or part of systemic negligence, might be forgiven under the good faith exception.

In the instant case, Agent Mullins reasonably relied on AUSA Woods to supply the correct statute for interstate sex trafficking of adults. Agent Mullins testified he had had a long working relationship with AUSA Woods and had no reason to believe Woods might supply the incorrect statute. All evidence indicated that citation of the wrong statute in the affidavit was the result of "nonrecurring and attenuated negligence," not intentional, reckless, grossly negligent, or recurrent conduct on the part of AUSA Woods. Under these circumstances, excluding evidence obtained from the tracking device would not serve as a deterrent to police or prosecutorial misconduct.

Finally, Defendant raises one last argument related to the good faith exception. Defendant argues that Agent Mullins' affidavit contains "no reliable allegations or assertions of fact" concerning the involvement of a minor. Therefore, by signing the warrant, "the magistrate judge abandoned his judicial role, rubber stamping a clearly deficient application for alleged violations of either 18 U.S.C. § 2423 or § 2421" [Defendant's Reply Brief at 4, Doc. 56, Page ID # 582]. [4]

---

[4] The issue concerning the neutrality of the issuing magistrate was raised for the first time in Defendant's reply brief. A movant generally waives issues raised for the first time in a reply brief. *Dunfee v. Finchum*, 132 F. Supp. 3d 968, 975 (E.D. Tenn. 2015). However, given the importance of the issues in this case, the undersigned will address it.

In *United States v. Leon*, 468 U.S. 897, 914-915 (1984), the Supreme Court held that the good faith exception to the exclusionary rule cannot apply where the magistrate abandoned his role as a neutral and detached judicial officer when issuing a warrant. "In issuing a warrant, the magistrate must have 'perform[ed] his neutral and detached function and not serve[d] merely as a rubber stamp for the police.'" *United States v. Labelle*, 390 F. App'x. 539, 544 (6th Cir. 2010) (brackets original) (quoting *United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006)). "The defendant carries the burden of proving that the issuing magistrate acted as a rubber stamp." *United States v. Frazier*, 423 F.3d 526, 537 (6th Cir. 2005) (citing *United States v. Rodriguez–Suazo*, 346 F.3d 637, 649 (6th Cir. 2003)).

Defendant argues that Magistrate Judge Johnson acted as a rubber stamp for police because he issued the tracking warrant even though the affidavit, which was devoid of any evidence of sex trafficking of minors, did not support probable cause to demonstrate violations of 18 U.S.C. § 2423. Where courts have addressed allegations that a magistrate has acted as a rubber stamp for police, there generally have been allegations of improper conduct on the part of the magistrate reflecting lack of neutrality and detachment. For example, in *Frazier*, 423 F.3d at 537, the defendant asserted that the issuing magistrate did not read the affidavit used to support the search warrant and based his decision to issue the warrant on unsworn testimony.

In the instant case, there is no evidence suggesting that the magistrate judge who signed the tracking warrant failed to read Agent Mullins' affidavit, that he failed to use his own judgment in issuing the tracking warrant, or that he otherwise failed to conduct himself in a neutral and detached manner. A mistake is not evidence of a lack of neutrality. It appears that the magistrate judge may have made the same mistake as AUSA Woods in not reviewing the definition of "illicit sexual conduct" found in Section 2423(f).

On the other hand, the facts presented in the affidavit establish that the Subject Vehicle was being used in interstate trafficking of adults for prostitution pursuant to Defendant's knowing persuasion, inducement or enticement, in violation of federal law. It is equally clear that the purpose of the warrant application was to secure a tracking warrant to obtain evidence of interstate adult sex trafficking. Finally, the affidavit provided probable cause that evidence of interstate adult sex trafficking would be found if a tracking device were placed on the Subject Vehicle. Accordingly, I find Defendant has not met his burden to show the magistrate judge acted as a rubber stamp for Agent Mullins.

### IV. Conclusion

For the reasons stated herein, I find that probable cause exists to support the tracking warrant, and further, in the alternative, that the good faith exception to the exclusionary rule applies. It is, therefore, **RECOMMENDED** that Defendant's motion to suppress evidence obtained from a tracking device placed on a gray Chevrolet Equinox bearing license plate number M44 29F be **DENIED**.[5]

**ENTER.**

                                                s\ *Christopher H. Steger*
                                                CHRISTOPHER H. STEGER
                                                UNITED STATES MAGISTRATE JUDGE

---

[5] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 59(b)(2) of the Federal Rules of Criminal Procedure. Failure to file objections within the time specified constitutes a waiver of the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).