**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT CHATTANOOGA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 1:16-cr-77 |
| v. | ) | |
| | ) | Judge Travis R. McDonough |
| CORRIE GILLISPIE | ) | |
| | ) | Magistrate Judge Christopher H. Steger |
| | ) | |

**MEMORANDUM OPINION**

Defendant filed a motion to suppress all evidence obtained pursuant to a tracking warrant

for Defendant's vehicle.  (Doc. 39.)  Magistrate Judge Christopher Steger held a hearing and

filed a report and recommendation, recommending that the Court deny the motion to suppress.

(Doc. 91.)  Defendant timely objected (Docs. 93–95), and the Government responded (Doc.

108).  For the reasons set forth below, the Court will **ACCEPT** and **ADOPT** the report and

recommendation (Doc. 91) and will **DENY** Defendant's motion to suppress (Doc. 39).

**I. STANDARD OF REVIEW**

This Court must conduct a *de novo* review of those portions of the report and

recommendation to which objections are made.  28 U.S.C. § 636(b)(1)(C).  *De novo* review does

not, however, require the district court to rehear witnesses whose testimony has been evaluated

by the magistrate judge.  *See United States v. Raddatz*, 447 U.S. 667, 675–76 (1980).  The

magistrate judge, as the factfinder, has the opportunity to observe and to hear the witnesses and

to assess their demeanor, putting him in the best position to determine credibility.  *Moss v.

Hofbauer*, 286 F.3d 851, 868 (6th Cir. 2002); *United States v. Hill*, 195 F.3d 258, 264–65 (6th

Cir. 1999).  A magistrate judge's assessment of witnesses' testimony is therefore entitled to

deference.  *United States v. Irorere*, 69 F. App'x 231, 236 (6th Cir. 2003); *see also United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999).

## II.    BACKGROUND

On May 17, 2016, a grand jury returned a four-count indictment that charged two individuals.  (Doc. 3.)  On June 28, 2016, a grand jury returned a ten-count superseding indictment charging the same two individuals (the "Indictment").  (Doc. 26.)  The Indictment specifically charged Defendant with various interstate human sex-trafficking crimes, including violations of 18 U.S.C. §§ 1201, 1591, 1957, and 2421.  (Doc. 26.)  On August 1, 2016, Defendant filed a motion to suppress all evidence obtained from the placement of a tracking device on a vehicle he drove, a "gray Chevrolet Equinox bearing license plate number M44–29F and vehicle identification number 2CNFLCEW6A6225835" ("Subject Vehicle").  (*See* Docs. 39, 40-1.)  Defendant argues there was no probable cause to issue a warrant for possible violations of 18 U.S.C. § 2423, the offense listed on the face of the warrant application.  (*See* Docs. 40, 40-1.)

On June 26, 2017, Magistrate Judge Steger held an evidentiary hearing on Defendant's motion to suppress, limited only to the question of whether good faith applied.  (*See* Doc. 85.) At the evidentiary hearing, Magistrate Judge Steger heard testimony from (1) Homeland Security Investigations Special Agent David Mullins, (2) Assistant United States Attorney ("AUSA") Jay Woods, and (3) Deputy United States Marshal James Miller.  (*See* Doc. 89.)  At the evidentiary hearing, AUSA Woods stated he intended that the affidavit refer to interstate sex trafficking of adults, not minors; that the affidavit should have cited 18 U.S.C. §§ 2421 and 2422(a); and that the citation of § 2423 was due to his misunderstanding of the definition of "illicit sexual activity" found in § 2423(f).  (Doc. 91, at 12–13.)

On August 10, 2017, Magistrate Judge Steger entered his report and recommendation,

recommending that the Court deny Defendant's motion to suppress. (Doc. 91.) On August 22, 2017, Defendant's standby counsel filed objections to the report and recommendation. (Doc. 93.) On August 24, 2017, Defendant, acting *pro se*, filed his own objections to the report and recommendation. (Doc. 94.) Defendant filed a supplement to his objections on August 29, 2017. (Doc. 96.) Defendant did not object to the basic facts outlined in Magistrate Judge Steger's report and recommendation, but he did object to the findings and legal conclusions related to those facts. (*See* Docs. 93–94, 96.) After reviewing the record before the Court and finding the facts to be consistent with Magistrate Judge Steger's report and recommendation, the Court **ADOPTS BY REFERENCE** the facts as set out in the report and recommendation.[1] (Doc. 91, at 1–3); *see, e.g.*, *United States v. Winters*, 782 F.3d 289, 295 n.1 (6th Cir. 2013). The Court will refer to the facts only as necessary to analyze the issues raised on objection. Defendant's objections to Magistrate Judge Steger's report and recommendation are now ripe for review.

## III.    ANALYSIS

Defendant, through standby counsel, raises two objections to Magistrate Judge Steger's report and recommendation. Specifically, Defendant objects to Magistrate Judge Steger's findings that (1) the facts contained in the affidavit establish probable cause to believe the Subject Vehicle was used in interstate sex trafficking, and (2) the good faith exception to the exclusionary rule applies. (Doc. 93, at 2–11.) Additionally, Defendant raises three objections in his *pro se* filings,[2] asserting that: (1) Defendant was in Indiana sleeping on February 3, 2016,

---

[1] The Court notes that neither party provided it with a copy of the transcript from the June 26, 2017 evidentiary hearing before Magistrate Judge Steger.

[2] Defendant raises additional objections in his *pro se* objections to the report and recommendation (Doc. 94), as well as the supplement to his *pro se* objections (Doc. 96). Keeping in mind that "the arguments and filings of *pro se* litigants should be liberally

and has no knowledge of any incident occurring on that date; (2) Defendant did not own the Subject Vehicle at the time of the arrest on July 26, 2013; and (3) Special Agent Mullins and AUSA Woods conspired together to manipulate "the U.S. caselaws and Magistrate Judge Walter Johnson" in obtaining the warrant. (Doc. 94, at 1–3.)

### A. Probable Cause for Interstate Sex Trafficking

Defendant first objects to Magistrate Judge Steger's finding that the supporting affidavit contains facts sufficient to establish probable cause for interstate sex trafficking. (Doc. 93, at 2–7.) On its face, the warrant affidavit alleges violations of 18 U.S.C. § 2423, but both parties have agreed there is no probable cause to support the transportation of *minors* in interstate commerce for prostitution or other sexual activities, as required by the cited section. (Doc. 40, at 6; Doc. 55, at 2–3). Instead, the government acknowledges an error in listing the wrong section of the Mann Act. (Doc. 55, at 3.) The government asserts it intended to list §§ 2421 and 2422(a) in the affidavit, which prohibit knowingly transporting *any individual* in interstate sex trafficking. *See* 18 U.S.C. §§ 2421, 2422(a). Defendant argues there is no probable cause to support interstate sex trafficking—regardless of whether the trafficked individuals are adults or minors—and, thus, the warrant should never have issued. (Doc. 93, at 2–7.)

Where an affidavit serves as the basis for a probable-cause determination, it "must provide the magistrate with a substantial basis for determining the existence of probable cause." *Illinois v. Gates*, 462 U.S. 213, 239 (1983). "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere

---

construed," the Court identified three main arguments in Defendant's *pro se* objections. *Lamb v. Howe*, 677 F. App'x 204, 207 (6th Cir. 2017). Although Defendant includes other objections, the Court cannot discern the basis of these objections or how they differ from the objections discussed here. Accordingly, they are not addressed.

ratification of the bare conclusions of others." *Id.* However, probable cause is not a high bar; it

requires only the kind of fair probability "on which reasonable and prudent men, not legal

technicians, act." *Id.* at 231. Where no outside facts were presented to the issuing judge, the

court makes a determination of probable cause by evaluating the information contained solely

within the four corners of the affidavit. *United States v. Dyer*, 580 F.3d 386, 390 (6th Cir. 2009).

Nevertheless, in reviewing the affidavit, the totality of the circumstances must be considered.

*Gates*, 462 U.S. at 230.

Defendant objects to the magistrate judge's finding that the affidavit alleged facts

sufficient to support a finding of probable cause for the existence of interstate sex trafficking.

(Doc. 93, at 2–5.) To establish a violation of the Mann Act, it must be shown "that the victim

was actually transported in interstate commerce, that is, across a state line or nation border." 2-

47A Modern Federal Jury Instructions-Criminal ¶ 47A.03 (2017); *see* 18 U.S.C. §§ 2421–24.

An examination of the supporting affidavit reveals the following facts:

- In 2009, Defendant and Amber Gaston were arrested and convicted of pimping and prostitution, respectively, following a prostitution sting in Georgia in which they traveled together in one vehicle to the prearranged meet-up.[3]

- Between July 2013 and February 2016, the Subject Vehicle was used during three separate prostitution stings. As detailed below, two stings occurred in Tennessee and one in Georgia.

- In the July 2013 prostitution sting, Defendant was arrested in the Subject Vehicle in Tennessee circling the hotel parking lot where undercover agents had made arrangements to meet prostitutes for sex. Gaston was arrested for prostitution. Gaston was connected to Defendant by physical proximity, as well as the tattoos of Defendant's pseudonyms on her face and neck.[4]

- In October 2015, in another prostitution sting, undercover officers met Gaston and

---

[3] The affidavit does not identify the vehicle involved, nor does it identify the domicile of either party at the time of the incident. (*See* Doc. 40-1, at 3.)

[4] The affidavit does not identify the domicile of either Defendant or Gaston during this time period. (*See* Doc. 40-1, at 3.)

another woman traveling in the Subject Vehicle at a prearranged location in Tennessee. The agents, acting in an undercover capacity, had contacted an advertisement for prostitution services that they discovered on Backpage.com. The undercover officers negotiated for illegal sex acts with the two women before revealing themselves as police officers. Defendant was not present.[5]

- Three and a half months later and only nine days before the tracking warrant was issued, on February 3, 2016, in yet another undercover prostitution sting, officers met Gaston traveling in the Subject Vehicle in Georgia for prearranged, illegal sex. Defendant was not present.[6]

(Doc. 91, at 5–6; Doc. 40-1, at 2–5.) The July 2013 incident supports a finding that Defendant controlled the Subject Vehicle. The only facts supporting the interstate element of §§ 2421 and 2422(a) concern the incidents of October 2015 and February 2016. These facts establish the Subject Vehicle[7] and Gaston, a woman tattooed with Defendant's moniker, were present during two prostitution stings taking place in two different states. Gaston is necessarily domiciled in only one state at a time—whether Tennessee, Georgia, or some other state. It is unlikely that Gaston changed her state of domicile within the three and a half months that separated the October 2015 prostitution sting and the February 2016 prostitution sting, both of which involved the Subject Vehicle. Taken together, a magistrate judge, exercising his own common sense and reasoned judgement, could find there was a "fair probability" state lines had been crossed for the purpose of human sex trafficking, as required for a violation of § 2421 or § 2422(a). Gaston's appearances in two states within this brief period of time, facilitated by a car controlled at least in part by Defendant, is enough to establish probable cause of a violation of §§ 2421 and 2422(a).

---

[5] The affidavit does not identify Gaston's domicile during this time period. (*See* Doc. 40-1, at 3.)

[6] The affidavit does not identify Gaston's domicile during this time period. (*See* Doc. 40-1, at 4.)

[7] Although not necessary to the analysis of Defendant's objections, the Court takes judicial notice of the fact that, in recent years, Tennessee license plates followed a "A12–34B" pattern and the license plate number included in the affidavit, M44–29F, matches this pattern.

*See Wagner v. United States*, 171 F.2d 354, 363 (5th Cir. 1948) ("Under this Act it is not

necessary that one actually transport himself or her or that he shall procure the tickets, but it is

sufficient if he causes to be transported or aids or assists in obtaining the transportation for the

purpose set out in the statute.").

Defendant also argues that certain incidents included in the affidavit cannot support

probable cause because they are "stale." (*See* Doc. 93, at 6.) More specifically, he asserts the

incidents occurring in different states on October 8, 2009 (Calhoun, Georgia) and July 26, 2013

(Chattanooga, Tennessee) cannot support probable cause for interstate trafficking because "these

events were separated by at least three years and nine and one-half months . . . negat[ing] any

reasonable inference that state lines were crossed to engage in either the first or second offenses

especially when we are never told where the parties' [sic] resided during the relevant time

periods." (*Id.* at 5–6.) Defendant is correct that an affidavit may not employ "stale" information

to establish probable cause. *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998).

However, this Court does not rely on either of the allegedly "stale" incidents in determining

whether there was probable cause that a victim was transported across state lines. The Court

makes no use of the 2009 incident and relies on the 2013 incident only to establish a connection

between Defendant and the Subject Vehicle. Accordingly, this objection is irrelevant and need

not be addressed.

Defendant next argues that the affidavit provides "no corroborating evidence" to infer the

incidents described "occurred in two different states." (Doc. 93, at 6.) Defendant points out that

the "affidavit fails to provide any information concerning vehicle registration, location of

residences, points of departure, or other facts which would allow a reasonable finding of

interstate commerce." (*Id.*) A supporting affidavit is analyzed based on "what it does contain,

not on what it lacks, or on what a critic might say should have been added." *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000) (en banc). A post hoc "line-by-line scrutiny [of an underlying affidavit is] . . . inappropriate in reviewing [a] magistrate['s] decisions." *Id.* at 973 (quoting *Gates*, 462 U.S. at 245 n.14).

It is clear that, had the government included the "corroborating evidence" Defendant describes, the magistrate judge's task of determining whether the affidavit established probable cause would have been made easier. However, affidavits are often drafted "in the midst and haste of a criminal investigation," and the Court must interpret them in a "commonsense and realistic fashion" to account for these actualities. *United States v. Colquitt*, 604 F. App'x 424, 430 (6th Cir. 2015) (quoting *United States v. Ventresca*, 380 U.S. 102, 108 (1965)). For the reasons explained above, the affidavit in this case, although not exemplary, contained sufficient information to establish probable cause for interstate sex trafficking. Accordingly, Defendant's objections as to the probable cause for interstate sex trafficking are **OVERRRULED**.

### B. The Good-Faith Exception

Defendant next objects to Magistrate Judge Steger's finding that the good-faith exception to the exclusionary rule applies. (Doc. 93, at 8–11.) Defendant makes clear that he does not object to the limited application of good faith to correct a citation error. (*Id.* at 8.) In other words, Defendant does not object to Magistrate Judge Steger's finding that the good-faith exception would apply, and the evidence would be admissible, if the affidavit establishes probable cause for interstate sex trafficking. On the other hand, Defendant does object to any ruling that would apply good faith to "excuse the absence of probable cause for the existence of interstate commerce and fail[] to suppress the warrant." (*Id.*)

Because the Court finds that the affidavit establishes probable cause for interstate sex

trafficking, Defendant's objection to the good-faith exception need not be addressed.

Accordingly, Defendant's objection related to the good-faith exception is **DISMISSED AS**

**MOOT**.

### C. Defendant's Pro Se Objections

Finally, Defendant objects to certain factual information contained in the affidavit and

alleges a scheme between Special Agent Mullins and AUSA Woods to mislead Magistrate Judge

Johnson.  (*See* Docs. 94, 96.)  Defendant objects to the February 13, 2016 incident contained in

the affidavit, asserting that he was in Indiana on that date and "has no knowledge of the event."

(Doc. 94, at 1.)  Additionally, Defendant objects to the July 26, 2013 incident contained in the

affidavit, averring that he did not own the Subject Vehicle at that time.  (*Id.* at 3; Doc. 96, at 6.)

Finally, Defendant makes several allegations that Special Agent Mullins and AUSA Woods

conspired to mislead Magistrate Judge Johnson in obtaining the warrant, including altering the

affidavit and committing "perjury."  (Doc. 94, at 1, 3–5; Doc. 96, at 1–3.)

Defendant raises each of these arguments for the first time before the district judge.  This

circuit "has not squarely addressed whether a party may raise new arguments before a district

judge that were not presented to the magistrate," but it has indicated in several cases that "a

party's failure to raise an argument before the magistrate judge constitutes a waiver."  *See, e.g.*,

*The Glidden Co. v. Kinsella*, 386 F. App'x 535, 544 n.2 (6th Cir. 2010) ("Because Kinsella failed

to raise his argument . . . before the magistrate judge and the district judge declined to consider

the argument on that basis, it is not properly before us."); *United States v. Ault*, No. 1:10-cr-20,

2011 WL 539710, at *2 (E.D. Tenn. Feb. 4, 2011).  Accordingly, this Court need not consider

the arguments Defendant failed to present to the magistrate judge unless there exist "special

circumstances in this case that would make reconsidering this general rule appropriate."  *Ault*,

2011 WL 539710, at *2.

The Court is unaware of any special circumstances in this case.  In fact, as the government points out in its response, Defendant has failed to conduct himself respectfully and to conform to the standards of conduct expected in the courtroom.  (Doc. 108, at 4.)  Instead of using his time before the magistrate judge in order to press his arguments, Defendant continues to deliver a barrage of insults and profanity each time he appears in court.  If special circumstances do exist, Defendant has not pointed them out to the Court and, in fact, has effectively waived his arguments.  Accordingly, Defendant's *pro se* objections are **OVERRULED**.

IV.    CONCLUSION

For the reasons stated herein, Defendant's first objection to the report and recommendation is **OVERRULED**, and Defendant's second objection to the report and recommendation is **DISMISSED AS MOOT**.  (Doc. 93.)  Additionally, Defendant's *pro se* objections are **OVERRULED**.  (Docs. 94, 96.)  The Court **ACCEPTS** and **ADOPTS** the report and recommendation (Doc. 91) and **DENIES** Defendant's motion to suppress (Doc. 39).

**SO ORDERED.**

/s/*Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**